IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Joe Whitaker, | ) | Case No. 8:11-2234-JMC-JDA |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Warden McCall, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment.
[Doc. 16.] Petitioner, proceeding pro se, is a state prisoner who seeks relief pursuant to
Title 28, United States Code, Section 2254. Pursuant to the provisions of Title 28, United
States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate
judge is authorized to review post-trial petitions for relief and submit findings and
recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on August 15, 2011.[1] [Doc. 1.]
On October 24, 2011, Respondent filed a motion for summary judgment and a return and
memorandum. [Docs. 16, 17.] On October 25, 2011, the Court filed an Order pursuant to
*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), advising Petitioner of the summary
judgment procedure and of the possible consequences if he failed to adequately respond
to the motion. [Doc. 18.] Despite this warning, Petitioner failed to respond; accordingly,
on January 27, 2012, the Court filed an Order allowing Petitioner through February 16,

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for
forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing
date in the light most favorable to Petitioner, this action was filed on August 15, 2011. [Doc. 1 (Petition dated
August 15, 2011); Doc. 1-1 (envelope stamped as received by prison mailroom on August 18, 2011).]

2012 to respond to the motion. [Doc. 22.] The Order advised Petitioner his Petition would be subject to dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure if he failed to respond. [*Id.*] To date, no response has been received from Petitioner.

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## **BACKGROUND**

Petitioner is currently incarcerated in the Perry Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Greenville County. [Doc. 1 at 1.] In May 2006, Petitioner was indicted for two counts of engaging a child for sexual performance and two counts of unlawful conduct towards a child. [App. 137–44.] In February 2007, Petitioner was indicted for two counts of second-degree criminal sexual conduct with a minor and two counts of promoting prostitution of a minor. [App. 129–36.] Petitioner proceeded to trial, where he was represented by Dorothy Manigault ("Manigault"). [App. 1.] During pretrial proceedings, after a jury was selected and Petitioner was found competent to stand trial, Petitioner decided to plead guilty to the charges. [*See* App. 41 (beginning of plea colloquy); *see also* App. 1–40 (pretrial proceedings prior to guilty plea).] Petitioner was sentenced to concurrent sentences of (1) twenty years imprisonment for the two promoting prostitution charges, the two criminal sexual conduct charges, and one charge of engaging a child for sexual performance; and (2) ten years imprisonment for the two unlawful conduct charges, to be suspended upon service of five years with five years probation. [App. 64–66.]

Petitioner was also sentenced to a consecutive twenty year sentence on the remaining charge of engaging a child for sexual performance.  [App. 65.]

**Direct Appeal**

Petitioner filed a direct appeal, where he was represented by Robert M. Pachak ("Pachak") of the South Carolina Commission on Indigent Defense.  [Doc. 17-3 at 1.] Petitioner raised one issue in an *Anders* brief to the South Carolina Court of Appeals: "Whether [Petitioner's] guilty plea complied with the mandates set forth in <u>Boykin v. Alabama?</u>"  [*Id.* at 4.]  At the same time he filed the *Anders* brief,[2] Pachak submitted a petition to be relieved as counsel.  [*Id.* at 8.]  Petitioner did not submit a pro se brief.  [*See* Doc. 17-4 (advising Petitioner of his right to submit a pro se brief).]  On July 17, 2008, the South Carolina Court of Appeals dismissed Petitioner's appeal.  [Doc. 17-5.]  Remittitur was issued on August 4, 2008.  [Doc. 17-6.]

**PCR Proceedings**

Petitioner filed an application for post-conviction relief ("PCR") on August 22, 2008.  [App. 69–81.]  Petitioner alleged he was unlawfully being held in custody because he was denied the effective assistance of counsel and his conviction violated "due process double jeopardy."  [App. 71.]  On November 26, 2008, Petitioner, through counsel Rodney Richey ("Richey"), amended his application to state as his ground for relief that he was denied effective assistance of counsel and to allege 31 bases for his claim of ineffective assistance.  [App. 89–92.]

_____

[2] A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

On August 13, 2009, an evidentiary hearing was held concerning Petitioner's PCR application. [App. 94–118.] Petitioner, Manigault, and Petitioner's mother, Nettie Whitaker, testified. [App. 95.] At the hearing, Richey stated Petitioner's ground for relief was ineffective assistance of counsel based on counsel's failure to investigate, to have an independent mental evaluation, and to honor a fifteen-year plea bargain. [App. 97.] On September 21, 2009, the PCR court filed an order denying and dismissing Petitioner's PCR application. [App. 119–28.]

On February 8, 2010, Wanda H. Carter of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a *Johnson* petition[3] for writ of certiorari in the South Carolina Supreme Court. [Doc. 17-7.] The petition asserted the following as the sole issue presented:

> Trial counsel erred in failing to move to withdraw the guilty pleas when the judge apprised the parties that he would not abide by the fifteen-year sentencing recommendation in the case.

[*Id.* at 3.] The court advised Petitioner of his right to file a pro se response to the petition for writ of certiorari [Doc. 17-9], but Petitioner failed to file a pro se response. The court denied the petition on March 16, 2011 [Doc. 17-10] and remitted the matter to the lower court on April 4, 2011 [Doc. 17-11].

---

[3] Like an *Anders* brief, a *Johnson* petition concedes the appeal has no merit. *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

**Habeas Petition**

Petitioner filed this Petition for writ of habeas corpus on August 15, 2011 pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner raises the following grounds for relief, quoted substantially verbatim:

| | |
|---|---|
| **Ground One**: | Ineffective Assistance of Counsel in violation of the 6th Amend of the U.S. Const. |
| *Supporting Facts*: | Trial Counsel was ineffective for failing to conduct a complete and proper pre trial investigation. And a factual investigation as needed. |
| **Ground Two**: | Ineffective Assistance of Counsel in violation of the 6th Amend of the U.S. Const. |
| *Supporting Facts*: | Trial counsel was ineffective for failing to investigate and present mental health issues. Specifically, Petitioner was taking medication, and was mentally ill at the time the crimes were alleged to have taken place. Moreover, the Petitioner was mentally ill and medicated at the time of the taking of his guilty plea. |
| **Ground Three**: | Ineffective Assistance of Counsel in violation of the 6th Amend of the U.S. Const. |
| *Supporting Facts*: | Counsel failed to enforce a 15-year plea agreement. |

[*Id.*] As previously stated, on October 24, 2011, Respondent filed a motion for summary judgment. [Doc. 16.] Petitioner has not filed a response to the motion.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon*

*v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual

determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

        (A) the applicant has exhausted the remedies available in the courts of the State; or

        (B)     (i) there is an absence of available State corrective process; or

            (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653

S.E.2d 266 (S.C. 2007).[4]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

> *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and

prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required

13

to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Murray*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To pass through this actual innocence standard, the petitioner's case must be truly extraordinary. *Murray*, 477 U.S. at 496.

### *Statute of Limitations*

Under the AEDPA, petitioners have one year to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)–(D). However, the statute tolls the limitations period during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

An application for post-conviction or other collateral review is not properly filed if the application is untimely under state law. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." (alteration in original)). In *Pace*, the United States Supreme Court held that time limits on filing applications for post-conviction or collateral review are filing conditions, no matter the form of the time limit. *Id.* at 417. Therefore, if an application for post-conviction or collateral review is barred by a state statute of limitations, statutory tolling under § 2244(d)(2) does not apply because the application was not properly filed.

The Supreme Court recently recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418). Therefore, "specific circumstances . . . could warrant special treatment in an appropriate case" such that the limitations period is not strictly applied. *Id.* at 2563.

## DISCUSSION

**Failure to Prosecute**

As previously stated, Petitioner has neglected to respond to Respondent's motion for summary judgment, despite two warnings from the Court about the consequences of

failing to respond. [*See* Docs. 18, 22.] Based on Petitioner's failure to comply with the Court's orders, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

"The Federal Rules of Civil Procedure recognize that courts must have the authority to control litigation before them, and this authority includes the power to order dismissal of an action for failure to comply with court orders." *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989) (citing Fed. R. Civ. P. 41(b)). "Federal courts possess an inherent authority to dismiss cases with prejudice *sua sponte*." *Gantt v. Md. Div. of Corr.*, 894 F. Supp. 226, 229 (D. Md. 1995) (citing *Link v. Wabash R. Co.*, 370 U.S. 626 (1962); *White v. Raymark Indust., Inc.*, 783 F.2d 1175 (4th Cir. 1986); *Zaczek v. Fauquier Cnty., Va.*, 764 F. Supp. 1071, 1074 (E.D. Va.1991)).

The Fourth Circuit, in *Davis v. Williams*, recognizing that dismissal with prejudice is a harsh sanction that should not be invoked lightly, set forth four factors for determining whether Rule 41(b) dismissal is appropriate:

(1) the degree of personal responsibility on the part of the plaintiff;

(2) the amount of prejudice to the defendant caused by the delay;

(3) the presence or absence of a drawn out history of deliberately proceeding in a dilatory fashion; and

(4) the effectiveness of sanctions less drastic than dismissal.

588 F.2d 69, 70 (4th Cir. 1978) (citing *McCargo v. Hedrick*, 545 F.2d 393, 396 (4th Cir. 1976)). Subsequently, however, the Fourth Circuit noted that "the four factors . . . are not a rigid four-pronged test," and whether to dismiss depends on the particular circumstances

of the case. *Ballard*, 882 F.2d at 95. For example, in *Ballard*, the court reasoned that "the Magistrate's explicit warning that a recommendation of dismissal would result from failure to obey his order is a critical fact that distinguishes this case from those cited by appellant. . . . In view of the warning, the district court had little alternative to dismissal. Any other course would have placed the credibility of the court in doubt and invited abuse." *Id.* at 95–96.

Because Petitioner is proceeding pro se, he is personally responsible for his failure to file a response. Petitioner has had over seven months to respond to the motion for summary judgment. The Court has warned Petitioner the case would be subject to dismissal if he failed to file a response. [Docs. 18, 22.] Despite this explanation, Petitioner has elected not to respond. Because Petitioner has already ignored deadlines set by the Court, sanctions less drastic than dismissal would not be effective, and thus, the Court recommends Respondent's motion for summary judgment be granted and the Petition be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

However, in an abundance of caution, the Court has also considered the Petition on its merits. With his Petition, Petitioner also filed a motion to appoint counsel, arguing he required counsel because he has severe learning disabilities and can only read and write on a second grade level.[5] [Docs. 5, 5-1, 5-2.] Because there is no right to counsel in a § 2254 action and Petitioner had demonstrated an ability to proceed in this case, albeit with the help of other inmates, the Court denied Petitioner's motion.[6] [Doc. 14.] Therefore,

---

[5] Petitioner averred another inmate prepared all of the documents Petitioner filed in this case. [Doc. 5-2 ¶ 6.]

[6] The Court indicated Petitioner was free to renew the motion if the Petition survived the summary judgment stage. [*Id.*]

in the event that Petitioner's limited ability to read and write prevented him from responding to the motion for summary judgment, the Court has considered the Petition on its merits.

**Merits of Petition**

Respondent concedes Petitioner's grounds for relief are exhausted and are not procedurally barred. [Doc. 17 at 9–11, 13.] Respondent argues, however, the PCR court reasonably applied the correct federal law in analyzing Petitioner's claims, and therefore, Petitioner is not entitled to any relief. [*Id.* at 13–18.] The Court agrees.

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule

but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[7] *Richter*, 131 S. Ct. at 785. "A state court must be granted a deference and

---

[7] In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Supreme Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Here, the PCR court held an evidentiary hearing, made findings as to the credibility of the witnesses, and outlined a factual basis for declining to find Manigault's representation fell below the *Strickland* standard. [App. 94–128.] The PCR court found "plea counsel adequately conferred with [Petitioner], conducted a proper investigation, and was thoroughly competent in her representation." [App. 125.] Specifically, the PCR court made the following findings:

> This Court finds [Petitioner] failed to meet his burden of proving plea counsel failed to investigate his case. Plea counsel filed discovery motions in this case. Furthermore, [Petitioner] was apprehended in the act of prostituting his two (2) nieces – who were twelve and fifteen years old at the time – to a group of men. (Plea transcript, pp.48-49). The victims gave statements to police implicating [Petitioner] in multiple instances of prostitution. (Plea transcript, p.50). This Court finds the Applicant has failed to specify what further information or evidence could have been uncovered after more investigation. . . .

This Court finds [Petitioner] failed to meet his burden of proving plea counsel should have better investigated his mental health issues. Plea counsel's motion for competency evaluation for [Petitioner] was granted and [Petitioner] was found competent after this evaluation. (Plea transcript, pp.26-27; p.29). The plea judge made a further finding of competency after a <u>Blair</u> hearing. (Plea transcript, p.38). This Court notes [Petitioner] failed to produce any expert testimony at the evidentiary hearing that he would not have been competent to stand trial or assist in his defense. . . .

This Court finds [Petitioner] failed to meet his burden of proving plea counsel should have enforced the State's fifteen (15) year sentence recommendation. The State did make a recommendation of a fifteen (15) year sentence in this case. (Plea transcript, p.41; p.56). [Petitioner], however, was advised that the plea judge was not obligated to follow that recommendation and that he was facing a maximum sentence of 160 years. (Plea transcript, pp.41-42). . . . This Court notes it is the plea judge's duty to give a sentence he thinks is appropriate after hearing the facts of the case. This Court finds that, after hearing the full recitation of facts and statements from the victims, the plea judge exercised proper discretion in levying the sentence. As such, there was no legal basis for plea counsel to have then attempted to bind the plea judge to the fifteen (15) year recommendation . . . .

[App. 125–27 (footnote omitted).]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. For example, with respect to Petitioner's competency to stand trial, the trial court conducted a *Blair* hearing, at which the doctor who conducted Petitioner's mental evaluation testified, as well as Petitioner's mother and Petitioner. [App. 25–40.] The trial court determined Petitioner was competent [App. 40], and as part of the plea colloquy, Petitioner testified as to his mental health and medications and indicated he understood he was pleading guilty to the crimes [App. 45–46]. Moreover, with respect to the fifteen-year plea deal, Petitioner affirmed at the plea colloquy that he understood he was facing a sentence of 160 years imprisonment. [App. 44.] Therefore, for the reasons stated above, the Court finds Petitioner is not entitled to federal habeas corpus relief based on the grounds raised in his Petition.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

May 30, 2012
Greenville, South Carolina